**DART DRUG, INC., Appellant,**

**v.**

**Eva LINTHICUM, Appellee.**

**No. 6509.**

District of Columbia Court of Appeals.

Argued Nov. 27, 1972.

Decided Feb. 6, 1973.

2. 84 Stat. 484, 485.

William D. Foote, Jr., Rockville, Md., with whom James C. Gregg and Hugh Lynch, Jr., Washington, D. C., were on the brief, for appellant.

Albert J. Ahern, Jr., Alexandria, Va., for appellee.

Before REILLY, Chief Judge, and NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This appeal from a judgment awarding compensatory and punitive damages[1] on a count of false arrest primarily attacks the sufficiency of the evidence to support the punitive damages award against the appellant corporation. After reviewing the evidence we agree and reverse that part of the judgment.

Mrs. Eva Linthicum and Miss Joyce Beverly, a co-worker, entered a Dart Drug, Inc. (hereinafter Dart) store. While shopping, Miss Beverly opened a package of cosmetics and applied it to her wrist in order to determine if it would suit her complexion. She then returned it to the counter without purchasing it. Both women paid for their purchases and left the store. They testified that upon reaching the street outside the store, they were confronted by the store detective who asked them to return to the store with him.[2] Once inside, they were taken to the rear of the store where the detective asked, "Where's the lipstick?" They both denied taking any lipstick. Mrs. Linthicum testified that the detective stated he had pictures of her stealing and asked her to open her bag, which she refused to do. After a period of time, the manager of the store, who was present in another office in the rear of the store, entered and apparently with Mrs. Linthicum's approval, looked into her bag and determined that she had not stolen anything. The manager informed the detective that "she's clean". Mrs. Linthicum testified that she was then released after a confinement of about two hours as was Miss Beverly who had signed a release and paid for the cosmetic she had previously opened.

Appellee had read into the record the manager's deposition which showed that the manager had overall supervisory control of the store except for the security personnel over whom he had no control. Additionally, the deposition of the detective indicated that Dart had a policy of awarding a bonus to its security personnel based upon the number of arrests and civil releases obtained during the month. The detective's testimony also indicated that he had received such bonuses and that two years subsequent to this incident he was promoted.

Appellant contends (1) that the trial court erred in denying its motion for a directed verdict with respect to the punitive damages, and (2) that the trial court's instruction on punitive damages, coupled

---

1. The judgment was for $3,000 compensatory damages and $5,000 punitive damages.

2. The store detective testified that he asked only Miss Beverly to return to the store.

with appellee's statements in closing argument, so misinformed the jury as to the potentiality of punishing the appellant that it could not and did not objectively award compensatory damages.

■ A principal may be held liable for punitive damages based upon the wrongful acts of his agent only where he participated in the doing of the wrongful act or had previously authorized or subsequently ratified the wrongful act. Safeway Stores v. Gibson, D.C.Mun.App., 118 A.2d 386 (1955). The mere malicious, wanton or oppressive act on the part of the agent is not sufficient to make the principal liable for punitive damages. *Id.* Viewing the evidence with all legitimate inferences therefrom in the light most favorable to the appellee, it must be shown that Dart had previously authorized or subsequently ratified the acts of the detective. The evidence presented at trial indicated that it was the store manager's action that terminated Mrs. Linthicum's confinement by the store detective. The manager's investigation of the detention and his search of Mrs. Linthicum's bag, apparently with her consent, were the actions that freed her. From these actions, appellee would apparently have us infer managerial authority or ratification of the detective's actions. On these facts, we cannot so infer.[3] If anything, his actions show an attempt to terminate her detention.

■ Additionally, appellee argues that the bonus policy of Dart based upon the number of arrests made by security personnel shows a prior authorization for the detective's actions. However, no further evidence was presented upon which it could be inferred that the bonus policy authorized *false* arrests. On this record it would be speculation for the jury to conclude that the management had previously authorized malicious acts by its employees. Without

more evidence as to the extent of the rewards/bonuses, the types of arrests for which the awards were given, the administration of the program, the encouragement given by the management personnel, or some evidence from which malicious or wanton conduct might be inferred, an award of punitive damages is inappropriate.

■ Appellee, relying on Safeway Stores v. Gibson, *supra*, also contends that the fact of the detective's retention and promotion two years after the incident indicates that Dart had ratified his actions. In that case, the court stated:

> It has been held that the retention of a servant after knowledge of his tortious conduct, *plus some additional indication of approval*, tends to prove ratification. . . . [*Id.* at 389; footnote omitted; emphasis supplied.]

In *Safeway*, there was testimony by the agent that the defendant had approved his actions. The instant case contains no additional evidence of approval by Dart management and, therefore, appellee's reliance on Safeway Stores v. Gibson, *supra*, is misplaced. Having considered the evidence in the light most favorable to the appellee, on these facts we find no evidence to show a prior authorization or subsequent ratification of the agent's acts. Therefore, it was error to permit jury consideration of the question of punitive damages.

■ Appellant also argues that the award of compensatory damages was the irrational product of consideration of punitive damages. It maintains that an award of $3,000 "could only be rationalized by a jury whose minds were wrongfully directed against the appellant corporation principally by virtue of the language of the instruction dealing with punitive damages", and secondarily by allegedly inflammatory com-

---

3. We do not here consider the difficult problem of whether large corporations can avoid punitive damage awards by merely separating management of security personnel from the general store management, that consideration not being necessary to the resolution of this case.

ments made in appellee's closing argument. Viewing the record as a whole, we do not consider the compensatory damages award legally excessive in light of the evidence presented as to the arrest and detention. Having been permitted to award punitive damages, we cannot assume on this record that the jury's award of $3,000 for compensatory damages was a product of "wrongfully directed" motive. The logical place for an excessive award would have been in the punitive column when the jury agreed on that amount. Moreover, since objections were not made in the trial court to either the instruction or the statements, they will not be considered for the first time on appeal in the absence of plain error. A B C D Corp. v. Henry, D.C.Mun.App., 109 A.2d 133 (1954).

Finding error in submitting the question of punitive damages to the jury, the judgment is modified by eliminating therefrom that $5,000 amount, and as so modified is affirmed.

Reversed in part and affirmed in part.